UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ROYAL SURPLUS LINES
INSURANCE COMPANY,

    Plaintiff,

v.                       CASE NO.: 3:01-CV-301-J-25-HTS

COACHMEN INDUSTRIES, INC.,
GAB ROBINS NORTH AMERICA,
INC. F/K/A GAB BUSINESS
SERVICES, INC., GEORGIE
BOY MANUFACTURING, and
GEORGIE BOY PROJECTS, INC.,

    Defendants.
_____/

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S APRIL 11, 2002 MOTION FOR SUMMARY JUDGMENT AGAINST ISSUE OF "WAIVER" IN SETTTLING HAAN AND PLAINTIFF'S APRIL 18, 2002 MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANTS COACHMEN AND GBM: NEGLIGENT MISREPRESENTATION

Defendants, COACHMEN INDUSTRIES, INC. ("Coachmen"), GAB ROBINS NORTH AMERICA, INC. f/k/a GAB BUSINESS SERVICES, INC. ("GAB"), GEORGIE BOY MANUFACTURING ("GBM"), and GEORGIE BOY PROJECTS, INC. ("GBP"), by and through their undersigned counsel, hereby respond to Plaintiff's April 11, 2002 Motion for Summary Judgment Against Issue of "Waiver" in Settling Haan and Plaintiff's April 18, 2002 Motion for Partial Summary Judgment Against Defendants Coachmen and GBM: Negligent Misrepresentation and in support thereof would show:

176

## I. Preliminary Statement

On or about April 11, 2002, Plaintiff's filed a Motion for Summary Judgment Against Issue of "Waiver" in Settling Haan. On or about April 18, 2002, Plaintiff's filed a Motion for Partial Summary Judgment Against Defendants Coachmen and GBM: Negligent Misrepresentation (these motions may be collectively referred to hereinafter as "Motions for Summary Judgment"). The issues contained in Plaintiff's Motions for Summary Judgment again revolve around the pinnacle issue in this case, i.e., whether an insurer, i.e., Royal, with knowledge of adverse facts, can settle a claim on behalf of its insured, i.e., Defendants, and then maintain an action against its insured for breach of duties based on contract or tort theories. Defendants submit that they have addressed the viability of the issues raised in Royal's latest Motions for Summary Judgment in Defendants' January 11, 2002 Motion for Summary Judgment. Notwithstanding, Defendants submit that neither of Plaintiff's Motions for Summary Judgment have any merit in fact or law under the circumstances of this case. Accordingly, Plaintiff's April 11, 2002 and April 18, 2002 Motions for Summary Judgment should be denied and the Court should grant Defendants' January 11, 2002 Motion for Summary Judgment.

## II. Statement Of Facts

### A. Richard M. Lavers' May 3, 2002 affidavit

The May 3, 2002 Affidavit of Richard M. Lavers [1] establishes the relevant facts of this case and provides as follows:

---

[1] Defendants submit that Royal's Motions for Summary Judgment were filed with the hope that Defendants would be forced to file evidence to contradict the evidence Royal submitted so that Royal could argue that the contradictory evidence creates an issue of fact. As will be described in more detail below, Defendants believe that the evidence Royal submitted in this case is all that is necessary for the Court to

2

1. This affidavit is being submitted in support of Defendants' January 11, 2002 Motion for Summary Judgment relating to Plaintiff's Amended Complaint, Defendants' December 18, 2001 Amended Memorandum of Law in Opposition to Plaintiff's Motion to Dismiss, Motion for Summary Judgment and Motion to Strike relating to Defendants' Counterclaim against Plaintiff, Defendants' Memorandum of Law in Opposition to Plaintiff's April 11, 2002 Motion for Summary Judgment against issue of "waiver" in settling Haan and Plaintiff's April 18, 2002 Motion for Partial Summary Judgment against Defendants' Coachmen and GBM: Negligent Misrepresentation.

2. I am General Counsel for Coachmen Industries, Inc. ("Coachmen"). Apart from my duties as General Counsel for Coachmen, I am also the Secretary of Coachmen as well as all of its subsidiaries, including Georgie Boy Manufacturing, Inc. ("GBM"). I am therefore charged with the maintenance of its/their books and records. I am also in charge of administering the pertinent Contracts for Services between Coachmen and GAB Robins North America, Inc. ("GAB") relating to liability cases.

3. In 1995, Royal Surplus Lines Insurance Company ("Royal") issued a commercial general liability insurance policy that covered Defendants for certain claims made during the period commencing 5/1/95 and ending 5/1/96. See, Exhibit "A" attached hereto [exhibit omitted], part of which is attached to Plaintiff's Amended Complaint as Exhibit "A". Royal also issued an umbrella policy that provided excess insurance coverage to Defendants during the same relevant period. See, Exhibit "B" attached hereto [exhibit omitted], part of which is attached to Plaintiff's Amended Complaint as Exhibit "B". I work regularly with the department charged with Coachmen, et. al.'s insurance programs and as a consequence, I am personally cognizant of Coachmen, et. al.'s insurance coverage and policies.

4. The insurance policy, attached hereto as Exhibit "A" [exhibit omitted] and Exhibit "A" to Plaintiff's Amended Complaint, specifically allowed Royal "the right in all cases...to assume charge of the defense and/or settlement of any claim..." See, Endorsement No. 15 of Exhibit "A" [exhibit omitted].

---

resolve the issues in favor of Defendants. Notwithstanding, Defendants have filed the May 3, 2002 affidavit of Richard M. Lavers in opposition to Royal's Motions for Summary Judgment and in support of Defendants' January 11, 2002 Motion for Summary Judgment in order to show the Court that many of the assertions contained in Mr. Strom's January 23, 2002 affidavit are false or misleading. Defendants also submit that Mr. Lavers' affidavit provides the Court with a better idea of the true scope of Royal's knowledge by giving the Court other parts of "Royal's claim file" for the Haan case that Royal conveniently failed to provide to the Court.

5. As a result of a tragic motor home accident that occurred on March 4, 1996, a claim that implicated the above-referenced insurance policies was made by Joyce Haan, individually, and as the personal representative of the estate of her husband, Earl Haan, against Coachmen, GBM, and Georgie Boy Projects, Inc. ("GBP"), inter alia. In the accident, Earl Haan was burned to death and Mrs. Haan suffered severe and debilitating injuries. Ultimately, Mrs. Haan filed a lawsuit, individually, and as the representative of Earl Haan against Coachmen, GBM, GBP and Chrysler Corporation in the Fourth Judicial Circuit in and for Duval County, Florida, Case No. 97-4330-CA ("Haan"). As General Counsel for Coachmen, I am/was of the opinion that Defendants were insured by Royal for the Haan claim and lawsuit. I am/was also personally aware that Royal did in fact respond with coverage of the Haan case.

6. In my capacity as General Counsel, I supervised the handling of the Haan lawsuit from and after November 1997. The lawyer directly handling the Haan case, Richard Bowers an Assistant Vice President-Legal for Coachmen, reported to me.

7. During the Haan proceedings, settlement discussions ensued between the Plaintiff Haan and all Defendants in that matter. I personally participated in meetings and/or discussions concerning the Haan case and Robichaux v. Georgie Boy Manufacturing, Inc. et. al. ("Robichaux") with Coachmen's lawyers and with Co-Defendant Chrysler Corporation, following the mediation of the Haan case and prior to the settlement of the Haan case.

8. I personally spoke with Mr. Strom about the settlement attempts made in the Haan case and Royal's ultimate decision to take control of the settlement of the Haan lawsuit. I know that none of the Defendants were involved at all in deciding to pay any portion of the Haan claim because Royal did not allow Defendants to participate in the ultimate settlement and Coachmen had already tendered its full self-insured retention to Royal. Defendants' Coachmen's, GBM's and GBP's, representatives were not even made aware of the amount of the settlement until after the settlement was accepted by Plaintiff Haan.

9. Prior to the settlement of the Haan lawsuit by Royal in April of 1999, Defendants had advised Royal of Robichaux and any and all other allegedly "damaging information" relevant to the Haan claim. In fact, the very first letter written by our department to GAB following the commencement of the Haan lawsuit on August 19, 1997, was dated October 10, 1997, and was also copied to Royal and Mr. Strom. See, Exhibit "C" attached to Defendants' Motion to Seal dated May 3, 2002. The letter stated, inter alia, "...[t]his certainly is a case with serious damage potential. We know of only one other incident similar to this in

4

the history of Georgie Boy..." That referenced incident was the <u>Robichaux</u> accident. Defendants also gave Royal all information they obtained from any and all investigations of the <u>Haan</u> claim conducted by GAB well before the <u>Haan</u> case was settled. <u>See</u>, Exhibit "D" attached hereto [exhibit omitted]. GAB's investigations were never kept secret from Royal.

10. I wrote to Mr. Strom personally concerning the <u>Haan</u> and <u>Robichaux</u> cases by letter dated February 22, 1999. <u>See</u>, Exhibit "E" attached to Defendants' Motion to Seal dated May 3, 2002. In fact, Mr. Strom and I had conversations about <u>Robichaux</u> before Royal settled the <u>Haan</u> lawsuit. Mr. Strom admitted to me that he had participated in the mediation of the <u>Haan</u> lawsuit (by telephone), that he had received my February 22, 1999 letter, and that he would be handling the Haan settlement negotiations from that point forward. At or about the time I sent the February 22, 1999 letter to Mr. Strom, I spoke with Mr. Strom on the telephone. At that time, I advised Mr. Strom that we were very concerned about the need to do a recall and were reviewing our obligations to do a recall on the GBM Swinger units. GBM never performed a recall in 1998 concerning the defect at issue on the gas tanks on the Swinger units at issue. The deposition testimony at p.68 of my January 11, 2000 deposition is in error as to the year. <u>See</u>, p.88 of my January 11, 2000 deposition where I correctly state that the recall was done in 1999. A "Defect Information Report" was sent on March 30, 1999. <u>See</u>, Exhibit "H" attached hereto [exhibit omitted]. The recall itself began subsequent to April 21, 1999.

11. Prior to the settlement of the <u>Haan</u> lawsuit, Mr. Strom also received various letters from Defendants' outside trial counsel advising him and Royal of the <u>Robichaux</u> case, inter alia, upon which the Coachmen legal department was copied. Examples of these letters are attached to Defendants' May 3, 2002 Motion to Seal as Exhibits "F" and "G".

12. Throughout the course of the proceedings in the <u>Haan</u> matter, Royal never denied coverage or asserted a defense to coverage of the claim made by the Haans against Coachmen, GBM and GBP. Further, Royal never reserved its right to assert a defense to coverage.

13. As part of the settlement of the Haan lawsuit, a "General Release of All Claims and Confidentiality Agreement" was executed by the parties. <u>See</u>, Royal's April 17, 2002 Notice of Filing of "General Release of All Claims and Confidentiality Agreement" in the <u>Haan</u> case dated April 16, 1999. Royal again did not reserve or otherwise protect its rights to coverage of the <u>Haan</u> claim before the "General Release of All Claims

5

and Confidentiality Agreement" was executed or before Royal voluntarily agreed to pay the Haan's settlement demand.

14. I have been personally involved in monitoring this lawsuit and all lawsuits related hereto including St. Paul Surplus Lines Insurance Company v. Royal Surplus Lines Insurance Company, Case No., 3:00-CV-251-J-25HTS, United States District Court, Middle District of Florida ("St. Paul v. Royal").

15. Kennard Weaver was never secretary, an officer or a director of GBM or any other subsidiary or affiliate of Coachmen or GBM from and after January 1996, when Coachmen acquired GBM. Mr. Weaver did remain as Dan George's personal attorney after said date.

16. Neither Coachmen, GBM, GBP nor GAB withheld any information from Royal nor did any of the Defendants make a conscious decision to avoid divulging damaging product information to Royal at any point in time.

17. At all times relevant hereto, Coachmen has not conducted nor do they conduct business as an insurance company.

**B.  Richard Strom's January 23, 2002 affidavit**

Richard Strom's January 23, 2002 affidavit and the attachments thereto establish the following relevant facts:

> Mr. Strom has been handling claims for Royal for twenty-five (25) years. See, ¶1 of Mr. Strom's January 23, 2002 Affidavit. Mr. Strom was at all times the person handling the Haan claim on behalf of Royal. Id. at ¶2.
>
> The first notice of the Haan claims and lawsuit received by Royal was received by Mr. Strom. Id. at ¶3. The notice was a copy of a letter dated October 19, 1997 from the general counsel of Coachmen to their third-party administrator, GAB. Id. The October 10, 1997 letter from Mr. Bowers advises, inter alia, "...[t]his certainly is a case with serious damage potential. We know of only one other incident similar to this in the history of Georgie Boy". Id. at Tab 2. A copy of the Amended Complaint in the Haan case was enclosed with the October 10, 1997 letter which Mr. Strom received. Id.
>
> Mr. Strom received the May 23, 1986 letter from Richard Naj to Virl Thompson regarding Robichaux on February 18, 1999. Id. at ¶¶20 and 21. Mr. Strom also received various correspondence regarding the Haan lawsuit from October 21, 1997 through December 23, 1998. Id.

6

The correspondence that Mr. Strom admitted receiving from October 21, 1997 through December 23, 1998 further establishes that:

1. On August 5, 1998, Mr. Strom and Royal were aware that the preliminary verdict range of the Haan case was 1.5-3.0 million dollars and that the preliminary settlement range was 1.0-2.0 million dollars. Id. at Tab 22, August 5, 1998 letter from Wendy Vomacka to Richard Strom;

2. On September 8, 1998, Mr. Strom and Royal were advised that Chrysler had a previous case involving a GBM motor home, that the expert that Chrysler was using in Haan believed that GBM moved the fuel tank, that Chrysler wanted to take a back seat to GBM and/or Coachmen in the Haan case presumably because the fuel tank was moved by GBM, and that Defendants' impression was that Chrysler would use the same expert in the Haan case that it used in the other case with GBM. See, Id. at Tab 27, September 8, 1998 letter from Wendy Vomacka to Richard Bowers;

3. On October 23, 1998, Mr. Strom and Royal were again informed that Chrysler would take the position that GBM moved the gas tank on the Haan motor home which affected the integrity of the gas tank strap holding the gas tank to the motor home. See, Tab 35 of Mr. Strom's January 23, 2002 affidavit, October 23, 1998 letter from Wendy Vomacka to Richard Bowers.

4. On October 30, 1998, Mr. Strom and Royal were again advised that Chrysler would take the position that GBM's movement of the gas tank on the motor home caused the accident in the Haan case. See, Id. at Tab 37, October 30, 1998 letter from Wendy Vomacka to Richard Strom;

5. On December 11, 1998, Mr. Strom and Royal were advised that GBM moved the fuel tank on the Haan motor home and that Chrysler would point to the motor home in the "Robisheau" (sic) case in Louisiana as proof that the altered fuel tank location affected the straps and their performance. See, Id. at Tab 41, December 11, 1998 letter from Wendy Vomacka and W.L. Kirk to Richard Bowers.

The Haan lawsuit was settled on April 16, 1999. See, Royal's April 17, 2002 Notice of Filing the General Release of All Claims and Confidentiality Agreements in the Haan case dated April 16, 1999.

7

### III. **Legal Argument**

#### A. **Introduction**

Plaintiff has moved for Summary Judgment on two different issues. In its April 11, 2002 Motion for Summary Judgment, Royal claims it is entitled to Summary Judgment because Royal allegedly did not waive its right to sue Defendants (Royal's insureds) because "Royal [allegedly] did not have the information necessary upon which to base a good faith denial of insurance coverage [to Defendants]" before Royal settled the Haan lawsuit. In its April 18, 2002 Motion for Summary Judgment, Royal claims that the evidence Royal has filed with the Court proves that Defendants' alleged "negligent misrepresentations" prevented Royal from denying coverage, or, at a minimum, reserving its right to coverage. [2] Although these motions address different aspects of the pinnacle issue in the case, the motions do not change how this issue is framed or resolved. As noted, the pinnacle issue in this case is **whether an insurer, i.e., Royal, with knowledge of adverse facts, can settle a claim on behalf of its insured, i.e., Defendants, and then maintain an action against its insured based on contract or tort theories.**

---

[2] Within Royal's April 18, 2002 Motion for Summary Judgment, Royal incredibly asserts that it has not been able to obtain access to "Coachmen production". This assertion appears to be a veiled attempt by Royal to convince this Court that the Court should doubt the integrity of Defendants and their defenses to this lawsuit by implying that Defendants are attempting to hide information from Plaintiff that would some how change the facts of this case. Counsel for Defendants submits that all responsive documents (subject to those documents contained on Defendants' privilege logs) were made available to Royal at every request made by Royal's counsel. In fact, as of the date of this Memorandum, at least three different lawyers from three separate law firms, i.e., Charles Howell, Paul Roecker and Lisa Oonk, have conducted an independent review the documents Royal claims it has not seen. There are thousands of documents that exist relative to the various requests made by Plaintiff. Apparently, these lawyers were unable to confer or convince one another of what they have seen and what they have not seen. It is improper for Royal to attempt to make its case claiming and/or insinuating that Defendants are violating or abusing the discovery process here. Royal had all of the relevant information in its possession before it decided to voluntarily settle the Haan claim. Accordingly, Royal should not claim or continue to insinuate that Defendants are hiding information from Royal or this Court. Notwithstanding, Defendants again welcome Royal to review the responsive documents at a mutually convenient time for the lawyers representing Royal and Defendants before this issue is once again raised without notice to Defendants.

8

The evidence submitted by Royal to support its Motions for Summary Judgment is not only insufficient to grant Summary Judgment in Royal's favor, it is insufficient to create any issue of fact with regard to any of the claims Royal has asserted against Defendants. In fact, the affidavits that Royal claims support its Motions for Summary Judgment are all that are necessary for the Court to grant Defendants' January 11, 2002 Motion for Summary Judgment against Plaintiff. Royal's latest Motions for Summary Judgment appear to have been filed by Royal in an effort to force Defendants to file evidence to contradict the evidence Royal has filed with this Court with the hope that Royal could argue that the different versions of "facts" make Royal's claims subject to resolution by a jury. Defendants submit that no twisted interpretation of the facts of this case changes the simple fact that Royal's Amended Complaint fails to state any cause of action against Defendants as a matter of law.[3]

### B. Royal Is Not Entitled To Summary Judgment "Against Issue Of 'Waiver' In Settling Haan" Or On Its "Negligent Misrepresentation" Claim Against Defendants

All of the evidence relied upon by Plaintiff in support of its Motions for Summary Judgment prove that Royal knew of all relevant adverse facts before it settled the Haan lawsuit. This Court has previously found that Royal's knowledge of these relevant adverse facts precludes Royal's action here. "[T]he traditional remedy in such circumstances is avoidance of coverage or relief of the insurer's duties under a policy; insurers cannot agree to pay pursuant to the policy and later bring a separate claim against the insured for damages. See, generally, 14 Couch on Ins. §208:4 (3d ed.)". Also

---

[3] This includes Defendant GAB since it is alleged that GAB's liability stems from the agency relationship between GAB and Coachmen. See, Defendants' January 11, 2002 Motion for Summary Judgment and Jackson v. Estate of Fraedrich, 472 So.2d 1266, 1268 (Fla. 1st DCA 1985) (An act done by an agent on behalf of the principal within the scope of the arrangement is not the act of the agent but of the person whose direction it is done).

9

see, this Court's December 18, 2001 order denying Royal's Motion for Reconsideration; Steadfast Insurance Company v. Sheridan Children's Healthcare Services, Inc. 34 F.Supp.2d 1364, 1366 (S.D. Fla. 1998); and Employers Mutual Liability Ins. Co. v. Sears Roebuck and Co., 621 F.2d 746, 748 (5th Cir. 1980).

The Haan case settled on April 16, 1999. In October of 1997, Royal received notice from Defendants of the Haan lawsuit. At that time, Royal was made aware that the Haan case had serious damage potential and that Defendants were aware of one other incident similar to the Haan case in the history of Georgie Boy. In August of 1998, Defendants informed Royal that the preliminary verdict range for the Haan case was 1.5-3.0 million dollars and that the preliminary settlement range was 1.0-2.0 million dollars. At various times from August 10 1998 through December of 1998, Royal was informed, inter alia, that Chrysler had a previous case involving a GBM motor home, that the expert Chrysler was using in Haan believed that GBM moved the fuel tank on the Haan motor home, that Chrysler wanted to take a back seat to GBM and/or Coachmen in the Haan case because the fuel tank was moved by GBM and that Chrysler would use the same expert in the Haan case as it used in the other case with GBM. In December of 1998, Defendants informed Royal that it appeared that GBM moved the fuel tank on the Haan motor home and that Chrysler would point to the motor home in the "Robisheau" (sic) case in Louisiana as proof that the altered fuel tank location affected the straps and their performance. By no later than February 22, 1999, about two months before, if not earlier, the Haan case settled, Royal had full knowledge of the Robichaux case and the reasons why the Robichaux case had not been discussed in greater detail when the Haan lawsuit

10

was instituted. Royal had a copy of the May 23, 1986 letter from Richard Naj to Virl Thompson on or before February 19, 1999.

These facts establish all that is necessary for the Court to deny Plaintiff's Motions for Summary Judgment and grant Defendants' January 11, 2002 Motion for Summary Judgment. Notwithstanding, Royal has attempted to "spice up" its version of the facts with irrelevant and/or false information. Defendants will address this information in further detail below.

In its Motions for Summary Judgment, Plaintiff appears to be claiming that its receipt of the May 23, 1986 letter from Richard Naj to Virl Thompson is itself significant. Where, how, why or when the May 23, 1986 letter was located is not an issue relevant to the circumstances here. Royal's knowledge of the letter and the Robichaux case itself before Royal voluntarily settled the Haan case is sufficient. When Royal received the May 23, 1986 letter and the additional information regarding the Robichaux case, it had a variety of options. It could have denied coverage of the Haan claim, reserved its right to deny coverage of the Haan claim or simply accept the letter and the Robichaux information and settle the Haan lawsuit. Much to Royal's regret now, it elected to settle the Haan lawsuit. Succinctly, Royal knew all the relevant facts about Robichaux, and the circumstances regarding its disclosure to make an intelligent choice. Having made its choice, Royal must accept the consequences.

The alleged "secret" GAB pre-suit investigation, "Coachmen's recall campaign in 1998" and Mr. Strom's assertion that he was not advised that the Haan lawsuit exposed Coachmen beyond its "SIR limit" do not change the circumstances of this case either.

11

First, GAB's allegedly secret pre-suit investigation is of no relevance to the issue at stake. It is uncontradicted that GAB shared its entire file with Royal on or about March 3, 1998. See, Exhibit "D" to Richard M. Lavers May 3, 2002 affidavit. Notwithstanding, even if Royal was not aware of this alleged "secret" pre-suit investigation, it still does not change the fact that Royal was aware of the Robichaux case before Royal settled the Haan lawsuit. Moreover, Royal does not even attempt to explain how GAB's "secret" pre-suit investigation would be relevant to any of the issues at hand. As such, this allegation can not be considered for any purpose here.

Second, Royal's reliance on "Coachmen's recall campaign in 1998" is not relevant either. First of all, the relevant GBM recall campaign occurred in 1999. Id. See, May 3, 2002 affidavit of Richard M. Lavers at ¶10. Accordingly, Royal's assertion that a recall occurred in 1998 is false. In any event, Royal was aware that GBM was considering a recall in February of 1999. Id. The recall itself did not occur until after April 21, 1999. Id. Thus, the "1998 recall campaign" is not germane to any issue since no relevant recall ever happened in 1998 and in any event, Royal was aware that GBM was considering a recall in February of 1999.

Third, the correspondence that Mr. Strom received and that was attached to his January 23, 2002 affidavit clearly shows that the testimony he provides in his affidavit is at direct odds with the correspondence. As noted above, Mr. Strom was advised, beginning in at least as early as August of 1998 and thereafter, that the Haan lawsuit exposed Coachmen beyond its "SIR limit". [4] See, Tab 22 of Mr. Strom's January 23,

---

[4] Defendants are unclear whether Plaintiff claims that it was told that the Haan lawsuit did not expose Coachmen beyond its "SIR limit" or whether Royal was told that "a reasonable settlement of the Haan case would be the [SIR] plus $500,000.00 to $1,000,000.00", or both. See, p. 8 of Royal's April 11, 1001

12

2002 affidavit and Exhibits E, F and G to Richard M. Lavers' May 3, 2002 affidavit. Unless Mr. Strom testifies that he did not read these letters, he can not state with a straight face that he did not know that the settlement value of the <u>Haan</u> case exposed Coachmen beyond its "SIR limit". Either way, having admitted that he received the letters, he is deemed to have knowledge of their content.

### C. **Defendants Have No Liability Here As "Insurers"**

Royal has repeatedly asserted that Defendant Coachmen occupied the role of a "primary [insurance] carrier" throughout the course of the <u>Haan</u> case. Royal has also repeatedly asserted that Defendant Coachmen had the exclusive right to investigate, defend and settle claims which fell within the amount of the "Self-Insured Retention" policy. Royal's assertions are contrary to law and fact.

As this Court has previously held, "the weight of authority establishes that a self-insured retention policy does not convert an insured into a primary insurer. <u>See</u>, e.g., <u>Cooper Lakes, Inc. v. Int's. Surplus Lines Ins. Co.</u>, 802 F.2d 667, 675 (3d Cir. 1986); <u>Diversified Servs., Inc. v. Avila</u>, 606 So.2d 364, 366 (Fla. 1992)" <u>See</u>, this Court's December 18, 2001 order denying Plaintiff's Motion for Reconsideration of Defendants' Motion to Dismiss. Further, the evidence in this Court's record establishes that Defendant Coachmen has not conducted nor do they conduct business as an insurance company. See, Richard M. Lavers' May 3, 2002 affidavit at ¶16.

Here, Royal has failed to identify any contractual term in the "Self-Insured Retention" policy that establishes that any of the Defendants were to function as a "primary insurance carrier" or that Royal would function as an "excess insurance carrier"

---

Motion for Summary Judgment and ¶24 of Royal's April 18, 2002 Motion for Summary Judgment. Either way, Royal knew the settlement of the <u>Haan</u> claim clearly would exceed Coachmen's "SIR limit".

13

under the circumstances. Likewise, Royal has failed to identify any contractual term in the "Self-Insured Retention" policy that establishes that Coachmen had an exclusive duty to investigate, defend or settle claims under any circumstance. These assertions are contrary to insurance policies at issue and the facts of this case.

At all times material hereto, Royal had the right to control the defense of the Haan case. Beginning in August of 1998, if not sooner, Royal knew the Haan case would not settle for less than Coachmen's "Self-Insured Retention" policy. Whatever Royal decided to do or not do at that point is Royal's problem. No matter how you look at the facts of this case, it is undisputed that Royal knew all relevant facts at the time it settled the Haan case. Accordingly, any further argument that the supposed "Self-Insured Retention" policy bestowed any heightened duties upon any of the Defendants, should be summarily rejected.

### D. Royal's Purported Experts Do Not Support Royal's Motions For Summary Judgment

Royal's purported experts do not help Royal change any of the facts either since the affidavits do not contain any inadmissible evidence this Court can consider to contradict the true facts of this case. The affidavits of Royal's purported experts can only be considered to support Defendants' defenses here since the affidavits establish that Royal admitted to these experts that it knew about the Robichaux case and all other allegedly "damaging information" before it settled the Haan claim. Otherwise, the affidavits of Royal's purported experts can not be considered supportive of Plaintiff's claim because they are based upon inadmissible hearsay, speculation, inaccurate legal conclusions or an uninformed or inaccurate knowledge of the facts relating to the settlement of the Haan case.

14

### E. Royal's Claim For Negligent Misrepresentation Is Barred By The Economic Loss Doctrine

Regardless of what knowledge Royal had before it settled the Haan claim, Royal's negligent misrepresentation claim fails as a matter of law based upon the Economic Loss Doctrine. Any and all duties Defendants had to Royal resulted from the insurance contracts between the parties. Defendants' duties under the insurance contracts are outlined within the insurance contracts.

Under Florida law, contract principles are more appropriate than tort principles to resolve purely economic claims. See, Eye Care Intern, supra at 1315. When facts surrounding a breach of contract action are indistinguishable from the alleged tort of negligence or fraud and the alleged tort does not cause harm distinct from that caused by the breach of contract, plaintiff is barred under Florida law from bringing the separate tort action. Id. at 1316. An independent tort "requires proof of facts separate and distinct from the breach of contract". Id. citing to HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So.2d 1238 (Fla. 1997)

Here, it is clear that Royal alleges that Defendants negligently performed their duties under the insurance policies issued by Royal to Defendants. Royal's claims revolve solely around Defendants' conduct relative to the insurance policies. Accordingly, Royal's negligent misrepresentation claim fails as a matter of law.

**Defendants hereby adopt their August 3, 2001 Memorandum of Law in Opposition to Plaintiff's Motion for Reconsideration, and their January 11, 2002 Motion for Summary Judgment and Memorandum of Law in support thereof as additional support in opposition to Royal's Motions for Summary Judgment.**

## VI. Conclusion

Interestingly enough, this case has evolved from a breach of contract and breach of fiduciary case into a fraud, deceit and misrepresentation case even though Royal had knowledge of the same relevant information before it settled the <u>Haan</u> claim. Unfortunately for Royal, it is grasping at straws by resorting to innuendo in some of its pleadings by accusing Defendants of being less then forthcoming in the discovery process here and by otherwise insinuating that Defendants have deceived Royal and the public at large by supposedly attempting to seal court files "all across the country". This sort of pleading tactic does not change the facts of this case and should not be considered remotely persuasive in determining whether Royal can state a claim here.

The facts of this case are simple and if there ever was a case ripe for summary judgment in favor of a Defendant, it is this case. The "facts" upon which Defendants rely upon for its Motion for Summary Judgment are made patently clear in Royal's Complaints and Mr. Strom's January 23, 2002 affidavit. Royal knew that the <u>Robichaux</u> case was a similar product liability case and they knew this as early as October 19, 1997. All of the information about the <u>Robichaux</u> case and the other allegedly "damaging information" was received by Royal before it voluntarily elected to settle the <u>Haan</u> case without any knowledge or input from any of the Defendants.

For the foregoing reasons, Defendants respectfully request this Honorable Court deny Royal's Motions for Summary Judgment on all grounds and enter summary judgment in favor of all Defendants on all grounds.

ANDERSON ST. DENIS & GLENN, P.A.

_____
GREGORY A. ANDERSON
Florida Bar No.: 398853
JOHN GLENN
Florida Bar No.: 0957860
DONALD W. ST. DENIS
Florida Bar No.: 0794864
4700 NW Boca Raton Blvd.
4th Floor
Boca Raton, Florida 33431
(561) 893-9192
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to Dennis J. Wall, Esquire, 3452 Lake Lynda Drive, Suite 170, Orlando, Florida 32817-1472 and Lisa A. Oonk, Esquire, Bayport Plaza, Suite 1100, 6200 Courtney Campbell Causeway, Tampa, FL 33607-5946, via U.S. Mail this _13th_ day of May, 2002.

_____
Attorney