UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ROYAL SURPLUS LINES
INSURANCE COMPANY,

       Plaintiff,

v.                                                              CASE NO.: 3:01-CV-301-J-25-HTS

COACHMEN INDUSTRIES, INC.,                DISPOSITIVE MOTION
GAB ROBINS NORTH AMERICA,
INC. F/K/A GAB BUSINESS
SERVICES, INC., GEORGIE
BOY MANUFACTURING, and
GEORGIE BOY PROJECTS, INC.,

       Defendants.

_____/

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Defendants, COACHMEN INDUSTRIES, INC. ("Coachmen"), GEORGIE BOY

MANUFACTURING ("GBM"), and GAB ROBINS NORTH AMERICA, INC. f/k/a GAB

BUSINESS SERVICES, INC. ("GAB"), by and through undersigned counsel and pursuant to

Fed. R. Civ. P. 56, hereby submit the following Memorandum of Law in support of their

Motion for Summary Judgment on all remaining Counts asserted against them in Plaintiff's

Amended Complaint and in support thereof would show:

**I.      STATEMENT OF THE FACTS**

**A.      The Affidavit of Richard Strom and Richard Strom's Deposition Testimony**

Mr. Strom was the person handling the Haan claim on behalf of Royal. See January

23, 2002 affidavit of Richard Strom at ¶2. His first notice of the Haan claim and lawsuit was

through a copy of a letter from Richard Bowers of Coachmen to GAB dated October 10, 1997. Id. at Exhibit 2 and Richard Strom's April 16, 2003 deposition at 66-67.   When Mr. Strom received notice of the Haan claim, he believed it had potential for being a very serious claim because he was advised that Joyce Haan jumped from the motor home, suffered severe burns and other injuries, and that her husband died in the accident. Id. at 71.  At that time, Mr. Strom was also advised that Coachmen knew of only one other similar incident in GBM's history. Id. at 72.   The fact that there was a similar incident was material to him because the similar incident may have had some bearing on the Defendants' liability for the Haan's claim. Id. at 73.

Before the mediation of the Haan lawsuit, Mr. Strom was advised that Mrs. Haan's medical bills were $753,178.52 and that her future medical costs were estimated at $123,863.19. Id. at 107-109 and exhibit 38 referenced therein.  As of September 8, 1998, before the mediation of the Haan lawsuit, Mr. Strom was advised that Chrysler was going to cite GBM's movement of fuel tank as the cause of the Haan accident. Id. at 110-111 and exhibit 42 referenced therein.   At that time, Mr. Strom was also advised that Chrysler's accusations about movement of the fuel tank were based upon an expert opinion in a prior case involving GBM and a moved fuel tank. Id. at 111-113.  Mr. Strom and Royal were again advised on October 23, 1998 that Coachmen, et. al.'s own expert said it looked like the strap on the Haan motor home was corroded and that Chrysler contended that GBM's movement of the fuel tank and placement of the straps somehow caused the straps to corrode and/or fatigue. Id. at 114-115 and Exhibit 43 referenced therein.

Mr. Strom did not attend the Haan mediation in person, but instead was available via

telephone. Id. at 121.  Mr. Strom can not think of anything that he learned subsequent to the mediation that he wished he had known at the time of the mediation. Id. at 124.

Mr. Strom testified that the revelation of the Richard Naj letter dated May 23, 1986 (the "Naj letter") closed the window of opportunity to settle the Haan lawsuit for anything less than it was ultimately settled for.  Id. at 126 and Exhibit 50 referenced therein.  Before the Haan case settled and after Royal received the Naj letter, Coachmen's excess insurance carriers covering the Haan case, Northland Insurance and St. Paul Surplus Lines Insurance Company ("St. Paul"), reserved their rights to deny coverage of the Haan lawsuit.  Id. at 150-151 and Richard Strom's July 7, 2004 deposition testimony at 98.  Mr. Strom admitted he did not find out any facts about the Robichaux case after he settled the Haan case that would have been significant to him in deciding to settle Haan.  Id. at 151.

Mr. Strom is not aware of any facts to indicate that Coachmen had it out for Royal. Id. at 155.  He has nothing that would indicate that Coachmen was intentionally trying to hurt Royal.  Id. at 155-156.  Mr. Strom's Haan file does not reflect that he was disappointed or felt there was a problem with Coachmen or GBM.  Id. at 157-158.  His file does not reflect that he was disappointed with the quality of the investigation or amount of information he had to evaluate the Haan claim.  Id. at 158.

In Mr. Strom's February 24, 1999 interoffice memorandum to his supervisor, Robert Mooney, he did not recommend that Royal reserve its rights to deny coverage of the Haan claim, nor did he indicate in that memorandum that he had any problems or concerns about receiving the Naj letter.  Id. at 163-168 and Exhibit 52 referenced therein.   After receiving the Robichaux information and the Naj letter, Royal did not reserve its rights to deny

coverage of the Haan claim.  Id. at 176.  There is nothing other than the Robichaux case and the Naj letter that Coachmen or any of its predecessors should have given Mr. Strom that he didn't get before settling the Haan claim.  Id. at 176-177.

To Mr. Strom's knowledge, St. Paul was given notice of the Haan claim in October of 1997.  Id. at 179-180 and Exhibit 12 referenced therein.  Mr. Strom has no knowledge of whether Defendants did anything wrong regarding notifying St. Paul of the Haan claim.  Id. at 180.

**B.**    **Mr. Strom's deposition testimony as Royal's Corporate Representative**

Richard Strom was designated as Royal's corporate representative with the most knowledge of: (1) what the true facts are surrounding the Robichaux lawsuit that Defendants allegedly concealed from Royal; (2) what the true facts are regarding the Naj letter that Defendants allegedly concealed from Royal;  (3) the results of the pre-suit investigation of the Haan claim that Defendants allegedly concealed from Royal;  (4) the 1998 recall of the gas tanks on the Swinger motor homes that Defendants allegedly concealed from Royal; (5) the terms and conditions of the insurance contracts issued by Royal to Defendants relating to the Haan claim and lawsuit; and (6) Royal's decision to settle the Haan lawsuit and the reasons therefor.   See July 7, 2004 deposition of Richard Strom at 6-7 and exhibit 177 attached thereto.

Mr. Strom was the only individual that handled the day to day oversight of the Haan lawsuit on Royal's behalf.  Id. at 11.  Royal's contention in this case is that the Defendants breached the insurance contracts issued by Royal to Defendants by not revealing information to Royal that Defendants knew prior to notice of the Haan claim.  Id. at 20-21.

As of the date of the mediation in the Haan lawsuit, Royal was aware that Chrysler was claiming that GBM was at fault for the Haan accident and that there was another prior similar incident that involved a gas tank strap failure. Id. at 51-52, 80, 87, 107-108. Royal was advised by Defendants that there was a similar incident in Louisiana prior to the Haan claim which, like the Haan claim, involved a gas tank strap failure. Id. at 55-58 and 80.

Royal does not have any knowledge that anyone at Coachmen or GBM intentionally concealed any information from Royal. Id. at. 47, 55, 86 and 111. Royal does not have any information or knowledge that the Naj letter was intentionally withheld from Royal by anyone, including Defendants. Id. at 67-68, 77-78, 83 and 87. Royal has no evidence that information from the Robichaux matter was intentionally concealed from Royal by Defendants. Id. at 78, 81, 83, 86 and 90. Royal is not aware of a 1998 recall performed by any of the Defendants. Id. at 25-26, 85 and 89. Royal does not have any documents or testimony that it can point to in order to establish that either Coachmen, GBM or GAB intentionally concealed anything from Royal regarding the results of Defendants' pre-suit investigation of the Haan claim. Id. at 84 and 90. *As of July 7, 2004, Royal's allegation that Defendants intentionally concealed something from Royal is based only upon speculation.* Id. at 81, 83 and 114. (emphasis added).

Royal had the Naj letter and the information on the Robichaux matter before it settled the Haan lawsuit. Id. at 79, 92. Royal's knowledge of the Naj letter and the Robichaux matter before it settled Haan suggested to Royal there was a reason to reserve its rights to deny Defendants' coverage for the Haan claim. Id.

Royal has no knowledge as to whether St. Paul received notice of the <u>Haan</u> claim at or about October of 1997.  <u>Id</u>. at 48.  Royal assumes that St. Paul did have notice of the <u>Haan</u> claim as of October, 1997.  <u>Id</u>. at 48-49.

**C.      Deposition Testimony of Robert Mooney**

Mr. Mooney is the Regional Claims Supervisor for Royal Sun Alliance in North Carolina.  <u>See</u> Deposition of Robert D. Mooney dated July 16, 2004 at 4-5.  Mr. Mooney works in Royal Sun Alliance's home office.  <u>Id</u>. at 5.  Mr. Strom worked for a subsidiary of Royal Sun Alliance, Plaintiff Royal, which dealt exclusively with excess coverage, either above a SIR or above a primary layer of coverage.  <u>Id</u>. at 11, 13 and 14.

Mr. Strom's immediate supervisor was Mr. Robert Alexander.  <u>Id</u>. at 13-14.  Mr. Alexander had $1 million in settlement authority to settle any claims against Royal's insureds.  <u>Id</u>. at 11.  If Mr. Strom wanted more than the $1 million, he would go through Mr. Alexander to Mr. Mooney.  <u>Id.</u> at 12.

With regard to the <u>Haan</u> claim, Mr. Mooney admitted Royal was advised of the seriousness of the damages as early as September 8, 1998.  <u>Id</u>. at 66.  Mr. Mooney further admitted that based upon the fact that the <u>Haan</u> claim involved two elderly people, one of whom died and one of whom was severely injured when their RV burst into flames, there was a large exposure for "someone other than [the Haans]."  <u>Id</u>. at 36.  Indeed, Mr. Mooney agreed that "fairly early on," he would have recognized the <u>Haan</u> claim was not worth less than the $500,000.00 Coachmen SIR.  <u>Id</u>. at 45.   In fact, as of September 10, 1998, Royal was advised that the <u>Haan</u> medical bills exceeded the amount of Coachmen's SIR.  <u>Id</u>. at 67.

Royal also received a letter on September 10, 1998 from Wendy Vomacka, defense counsel for Coachmen in the Haan case, also advising that Mr. Gough (Chrysler's in-house counsel) told her Chrysler had a previous case involving a GBM motor home and the fuel tank/straps, and the "expert Chrysler was using believes that GBM moved the fuel tank." Id. at 66. Prior to that, as early as October 10, 1997, Royal knew of the existence of the prior similar accident. Id. at 63. Yet, Mr. Strom did not initiate any investigation above what Coachmen directed GAB to do. Id. at 64-65. Mr. Mooney agreed that Royal assumed the risk that if the investigation was not handled the way Royal would have liked, that by the time Royal "jumps in," it may learn of facts that change its valuation of the claim. Id. at 65.

Mr. Mooney agreed that Mr. Strom knew, prior to the date of the mediation on October 1, 1998, that Chrysler had expert testimony that the fuel tank had been moved by GBM and that this would change the complexion of the case. Id. at 67. Mr. Mooney agreed that Chrysler was maintaining "the same thing" at the mediation that it did in the Naj letter, referring to Chrysler's position that GBM moved the fuel tank straps, which caused the failure, and ultimately the Robichaux and Haan accidents. Id. at 61-62.

Despite Mr. Strom's knowledge of the above facts, Mr. Mooney testified Mr. Strom's authority to settle the Haan case prior to the October, 1998 mediation would have been limited to $1 million. Id. at 48. He further testified Mr. Strom did not come to him seeking settlement authority in excess of $1 million at any time during the fall of 1998 following the mediation. Id. at 50. In fact, the first Mr. Mooney was involved with the Haan claim was following Mr. Strom's February 24, 1999 memo to him requesting settlement authority well above the $1 million Mr. Strom already had. Id. This, too, is in spite of the fact that defense

counsel for Coachmen sent a letter on January 8, 1999, advising that the verdict range in Haan could be $5 to $12 million plus punitive damages of $15 to $36 million. Id. at 74-75. This was also prior to the revelation of the Naj letter on February 16, 1999. Id. at 75.

Notwithstanding its knowledge of Chrysler's position, the existence of the similar incident (Robichaux), the severity of plaintiff's damages, and the Naj letter, Royal did not reserve it rights prior to settling Haan, id. at 54-55, although it is the responsibility of Royal, as the insurance carrier, to reserve its rights if it is "aware of something that impacts coverage." Id. at 55.

### D.   The Affidavit of   Richard Bowers and Richard Bowers' Deposition Testimony

Mr. Bowers was previously employed by Coachmen as Vice President-Legal and then as Assistant Vice-President-Legal.  See the July 29, 2004 Affidavit of Richard Bowers. From the time that the Haan lawsuit was filed, he directly monitored the day-to-day activities involved in that lawsuit.  Id.  On October 10, 1997, he wrote to Sue Lavin of GAB notifying her that the Haans had filed a lawsuit against Coachmen and GBM, inter alia.  Id.  See also Exhibit "A" attached thereto.  At that time, Mr. Bowers also sent a copy of the same letter to Coachmen, et. al's excess insurers for the Haan claim and lawsuit, Royal and St. Paul.  Id. At no time during the pendency of the Haan claim and lawsuit did Coachmen or GBM, or any of the other named Defendants in that matter, conceal from either St. Paul or Royal any facts about the Robichaux lawsuit or the Naj letter.  Id.  See also Exhibit "B" attached thereto.  Furthermore, neither Coachmen nor GBM, nor any other affiliated entity, performed a recall for the 1978 or 1979 Swinger model motor homes during the calendar year 1998.  Id. The results of all pre-suit investigations conducted by Defendants in the Haan case were also

8

revealed to Royal prior to, or during, the mediation of that case and prior to the settlement of that case. Id. None of the results of any of the pre-suit investigations relating to the Haan case were concealed from Royal at any time whatsoever. Id.

Mr. Bowers advised Mr. Strom before November 1, 1998 that Defendants had confirmed that GBM had moved the tank on the Haan vehicle and that the Robichaux vehicle's gas tank had been moved as well. See September 26, 2003 deposition of Richard Bowers at 168-170. Mr. Bowers discussed the Robichaux matter with Mr. Strom at the time of the Haan mediation. Id. at 274-275 and 281. Mr. Bowers did not hold back any information from Mr. Strom. Id. at 275. GAB did not do any secret investigations. Id. at 299. Mr. Strom never complained to Mr. Bowers about anything regarding the Haan case. Id. at 302-303. There was no other information about the Robichaux case that was not revealed to Royal before the Haan case was settled by Royal. Id.

### E.   The Affidavit Of Mike Brownlee And The Certified Letter From NHTSA

Mr. Brownlee was employed by the National Highway Traffic Safety Administration ("NHTSA") from 1978 to 1997. See April 28, 2004 affidavit of Michael Brownlee. NHTSA is the agency of the Federal Government charged with responsibility for investigating motor vehicles and motor vehicle equipment safety-related defects. Id.

From 1987 to 1991 Mr. Brownlee served as the Director of NHTSA's Office of Defects Investigation ("ODI"), which is charged with identifying, investigating, and correcting safety-related defects in motor vehicles. Id. ODI is also responsible for managing all recalls to correct safety related defects reported to NHTSA under the National Traffic and Motor Vehicle Safety Act, including maintaining all records of such recalls. Id. Those

records are available for public examination in NHTSA's offices.  Id.  From 1995 to 1997,

Mr. Brownlee served as NHTSA's Associate Administrator for Safety Assurance, with

responsibility for both ODI and the Office of Vehicle Standards Compliance.  Id.   ODI

oversaw both defects and noncompliance recalls during that period.  Id.

Mr. Brownlee was asked to examine the ODI files to determine whether there was a

recall in calendar year 1998 by Coachmen, GBM, or any other entity known as "Georgie

Boy" to correct a safety related defect.  Id.  On April 19,  2004, Mr. Brownlee visited the

NHTSA offices responsible for maintaining all records pertaining to recalls to correct safety

related defects under the National Traffic and Motor Vehicle Safety Act and examined the

1998 records.  Id.  In calendar year 1998, there were no recalls conducted by GBM or any

other entity known as "Georgie Boy."  Id.   In addition, there were no recalls conducted by

Coachmen in 1998 to correct a defect to the fuel tank mounting straps in Chrysler M50 and

M60 chassis.  Id.  Mr. Brownlee's review of the NHTSA ODI files further revealed that there

were no recalls to correct safety related defects under the National Traffic and Motor Vehicle

Safety Act in the calendar year 1998 pertaining to the 1978 or 1979 Swinger model motor

homes either by Coachmen or by GBM, or any other entity known as "Georgie Boy."  Id.

Mr. Brownlee's conclusions are supported by NHTSA as well.  See Defendants' Request for

Judicial Notice of Certified Letters dated May 18, 2004 and July 14, 2004 from Kathleen

DeMeter, Director of Office of Defects Investigations for NHTSA confirming that none of

the Defendants performed a recall in 1998 on the 1978 or 1979 Swinger model motor homes.

## II.    LEGAL ANALYSIS

### A.    Introduction

Defendants hereby adopt all legal arguments, legal authority and record evidence set forth in their April 23, 2001 Motion to Dismiss and Memorandum of Law in Support Thereof and their October 17, 2003 Memorandum of Law in Opposition to Plaintiff's Renewed Motion for Partial Summary Judgment Against Defendants Coachmen and Georgie Boy Manufacturing: Negligent Misrepresentation and Renewed Motion for Summary Judgment Against Issue of "Waiver" in Settling Haan in support of this Motion.

As a result of the Court's September 17, 2002 order regarding the parties' Motions for Summary Judgment and its December 2, 2002 order on Defendants' Motion for Clarification of the September 12, 2002 order denying Motions for Summary Judgment, Plaintiff's causes of action for Breach of Contract and Negligence remain only to a very limited extent.  All other counts and claims have been disposed of by the Court's September 17, 2002 order.

As to the Breach of Contract claim, the issues that remain pending are whether Defendants Coachmen and GBM breached the provisions of the insurance contract between them and Royal by intentionally concealing from Royal:  (1) the true facts regarding Robichaux matter and the Naj letter prior to the October 1998 mediation;  (2) the results of the presuit investigation of the Haan accident until after the Haan settlement; and (3) the alleged 1998 recall until after the Haan settlement.  As to Plaintiff's Negligence claim, the issue that remains pending is whether Defendants Coachmen, GBM and GAB were negligent in providing notice of the Haan claim to St. Paul.  Defendants submit that the record evidence

before this Court establishes that all Defendants are entitled to Summary Judgment as a matter of law on these two remaining counts. Accordingly, as will be more fully detailed below, none of the remaining causes of action asserted in Plaintiff's Amended Complaint enable Plaintiff to avoid the undeniable conclusion that its Amended Complaint fails to state any cause of action against Defendants under any circumstance.

**B.      Standard Of Review**

Summary Judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  See Raney v. Aware Woman Center for Choice, Inc., 224 F.3d 1266 (11th Cir. 2001).  Where the record taken as a whole could not lead a rational trier of fact to find for the moving party, there is no genuine issue for trial of a kind sufficient to preclude entry of Summary Judgment.  See In re Optical Technologies, Inc., 246 F.3d 1332 (11th Cir. 2001).  Further, Summary Judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case and on which that party will bear the burden of proof at trial.  See Schoell v. Regal Marine Industries, Inc., 247 F.3d 1202 (11th Cir. 2001).  Importantly, Summary Judgment cannot be defeated with mere speculation and conjecture.  See Blackston v. Shook & Fletcher Insulation Co., 764 F.2d 1480, 1482 (11th Cir. 1985).

**C.      Defendants Did Not Intentionally Conceal From Royal That They Knew The True Facts Regarding The Robichaux Matter And The Naj Letter Prior To The October 1998 Mediation Nor Did Defendants Intentionally Conceal The Results Of The Pre-suit Investigation Of The Haan Accident From Royal**

Defendants submit that no evidence exists to establish that any of the Defendants intentionally concealed anything from Royal regarding the Haan claim and lawsuit at any

point in time whether it be prior to the 1998 mediation of the Haan lawsuit, prior to its settlement or after its settlement.  In fact, the record evidence before this Court establishes that Royal knew all it needed to know in order to make a well informed decision as to whether or not and when to settle the Haan lawsuit.  Royal's allegations to the contrary are admitted by it to be based purely upon speculation.   The key individuals involved in providing the evidence necessary to support Defendants' Motion for Summary Judgment are Richard Strom, in both his individual capacity and as corporate representative of Royal, Robert Mooney, Richard S. Bowers, Mike Brownlee and Kathleen DeMeter of NHTSA.

Royal continually asserts Defendants possessed knowledge Royal did not have.  While some may argue that this may be inherently true, it certainly is not indicative of anything nefarious.  Rather, it is a product of reality in any situation involving interaction of an insured and an insurer in the course of defending a lawsuit or claim brought against the insured.  Because Defendants were handling the day-to-day matters in the lawsuit and because Royal did not exercise its contractual right to take over management of the defense or diligently perform its contractual duty to investigate the claim, the Defendants could in theory always "know" something that Royal may not.  However, there is no conceivable reason, and indeed Royal has advanced none, as to why Defendants would jeopardize their insurance coverage by not cooperating in their own defense.

Defendants submit there are important questions that are easily answered in this case.  Did Royal have notice of the Robichaux claim long before November 1, 1998?  Yes.  See Richard Strom's April 16, 2003 deposition at 66-79 and Exhibit 12 thereto and Richard Strom's July 7, 2004 deposition at 48.  Did Royal have a contractual duty to defend and

investigate the Haan claim?  Yes.  See Richard Strom's April 16, 2003 deposition at 61-66 and Exhibit 9 thereto.  Was Mr. Strom ever denied any information?  No.  See Richard Bowers' September 26, 2003 deposition at 301-304.  Instead, Royal elected, deliberately and knowingly, to take a back seat in the handling of this claim.

For example, Royal complains that it was allegedly not informed of everything that transpired at the October, 1998 mediation, but fails to point out that Mr. Strom chose not to attend that mediation in person.  See Richard Bower's September 26, 2003 deposition at 281-285 and Richard Strom's April 16, 2003 deposition at 121.  There is no possible way Coachmen could have informed Mr. Strom of every detail that occurred in a full day mediation in the limited time he appeared at the mediation via telephone.  Defendants' representative who attended the mediation, Mr. Bowers, did speak to Mr. Strom during the mediation.  See Richard Bowers' September 26, 2003 deposition at 281-285.  Mr. Bowers was available to answer any questions Mr. Strom may have had.  Id.  That notwithstanding, Mr. Bowers testified he informed Mr. Strom of all material matters before, during and immediately after the mediation.  Id.

It is clearly undeniable that Defendants advised Royal in October of 1997, and on numerous other occasions before the Haan lawsuit was settled, that GBM was aware of one other (the only) similar incident in the history of GBM and that the Defendants advised Royal on these occasions that the Haan case was "certainly a case with serious damage potential."  See Richard Strom's April 16, 2003 deposition at 66-79, 110-111, 114-115 and for example, Exhibits 12, 38, 42, 43, 46 and 51 attached thereto, and Tabs 22, 27, 35, 37 and 41 to Richard Strom's January 23, 2002 affidavit.  Defendants clearly placed Royal on notice

14

of the <u>Robichaux</u> matter.  <u>Id</u>. Defendants also advised Richard Strom before November 1, 1998 that they knew the gas tank had been moved on the Haan's motor home, and that Chrysler was contending both that the tank had been moved and that the movement caused the accident.  <u>See</u> Richard Bowers' September 26, 2003 deposition at 166-170.

Nothing in the record in this case establishes that Mr. Strom or Royal ever asked for more specific information on the <u>Robichaux</u> matter.   Moreover, Richard Bowers has established through his September 26, 2003 deposition testimony that the information about the <u>Robichaux</u> matter was shared by him with Mr. Strom before November 1, 1998.  <u>See</u> Richard Bowers' September 26, 2003 deposition at 159-180.   Specifically, Richard Bowers testified that the information about the <u>Robichaux</u> matter was "…stuff they [i.e., Royal] already knew…."  <u>Id.</u> at 174.  Can anybody seriously believe the contention that information regarding the <u>Robichaux</u> matter was being "concealed?"  Defendants submit that the actual reason nobody, including Mr. Strom, pursued more information concerning the <u>Robichaux</u> case for some time is quite simple: the Judge's discovery rulings in the <u>Haan</u> litigation appeared to make the <u>Robichaux</u> case irrelevant, and the strategy was to settle the case.  <u>See</u> Richard Bowers' September 26, 2003 deposition at 278-281.  Bad Strategy?  Perhaps, but deliberate, or even negligent, concealment?  No.

Defendants submit the various suggestions, innuendoes and/or insinuations Plaintiff will contend can be gleaned from the record evidence in this case cannot change the fact that Defendants were repeatedly made aware of the <u>Robichaux</u> lawsuit, its similarities to the <u>Haan</u> claim, and the details surrounding Chrysler's contentions against GBM regarding <u>Robichaux</u> beginning in October of 1997 through November 1, 1998 and up to the time the <u>Haan</u> lawsuit

was settled in or about March of 1999. In fact, Mr. Strom testified he cannot recollect a single fact he found out about the <u>Robichaux</u> case after settlement that would have been significant to him before he settled the <u>Haan</u> case. <u>See</u> Richard Strom's April 16, 2003 deposition at 151.

*Interestingly enough, as outlined above in the Statement of the Facts, Mr. Strom also has no facts, information, knowledge, or evidence to indicate Defendants were intentionally trying to hurt Royal or that Defendants intentionally concealed anything from Royal at any time. Instead, Mr. Strom, on Royal's behalf, candidly and amazingly admitted that Royal's allegations that the Defendants concealed something from Royal are based only upon speculation.* Royal also has no documents or testimony it can point to to show that either Coachmen, GBM or GAB intentionally concealed anything from Royal regarding the results of Defendants' pre-suit investigation of the <u>Haan</u> claim. <u>Id</u> at p. 155-156. Nothing Royal has submitted or may submit to this Court in the future will change these facts. Unfortunately for Defendants, Royal's assertion of purely speculative allegations to support this lawsuit have caused Defendants to spend vast amounts of monies to defend a lawsuit that has been without merit and otherwise frivolous from its inception.

No matter which way Royal attempts to twist the quantity of the information it had about <u>Robichaux</u>, it can not refute its knowledge of the quality of the information it had regarding <u>Robichaux</u>. Simply, Royal was aware of the one (and only) other similar incident that could have impacted the resolution of the <u>Haan</u> case. Fundamentally, this is what this case is about: Royal took the risk of not putting up the money to settle this case when it could have done so for $2,000,000 because it was trying to settle for less. Instead of settling a case

16

it knew had significant damage potential, Royal decided to run the risk of "playing a little poker" with the hopes of settling the case on terms more favorable to Royal. See Richard Bowers' September 26, 2003 deposition at 195-196, 278-279, 287-290 and 303-304. Royal's insured, i.e., Defendants, should not be punished for Royal's bad judgment. Nothing in this case lends any support to the notion that Royal was somehow deceived by Defendants at any point in time. See Richard Strom's April 16, 2003 deposition at 155-156 and Richard Bowers' September 26, 2003 deposition at 302-304.

**D.      No 1998 Recall Was Ever Performed By Any Of The Defendants**

Surprisingly, Royal continues to assert allegations regarding the so called 1998 recall that it supposedly was not made aware of until after the settlement of the Haan lawsuit. This is typical of the "evidence" Royal has tried to create to give life to its claims. Apparently, Royal's allegations regarding this so called recall were given birth as a result of confusion as to calendar years in the January 11, 2000 deposition testimony of Richard Lavers. Mr. Lavers' testimony *later in that same deposition* clarified that 1999 was the date of the recall in question. See Mr. Laver's deposition at 88. In spite of that correction, Royal has repeatedly asserted for over four years, on this flimsy basis, that Defendants concealed a "secret" recall. Mr. Lavers has since submitted an affidavit establishing that his testimony regarding the date of the recall was in error when he testified that a recall was done in 1998. See this Court's Docket No. 168. In that affidavit, he clarified the recall was actually done in 1999. Id. Plaintiff has not submitted and in fact cannot submit any proof of any recall in 1998. In that vein, Defendants submit they are entitled to Summary Judgment on this issue on this proof alone.

However, in order to put this issue to rest for good, Defendants have filed the affidavit of Michael Brownlee.   See April 28, 2004 Affidavit of Michael Brownlee. Defendants have also asked this Court to take Judicial Notice of Certified Letters dated May 18, 2004 and July 14, 2004 from Kathleen DeMeter of the NHTSA.   Mr. Brownlee's affidavit establishes no such recall was performed by any of the Defendants during 1998. The certified letters from NHTSA also confirm no such recall was done by any of the Defendants in this case during 1998.  Plaintiff has not, and can not, submit any proof to the contrary.

**E.**     **The Defendants Were Not Negligent In Providing St. Paul With Notice Of The Haan Claim.**

Whether Defendants were negligent in providing St. Paul notice of the <u>Haan</u> claim is an issue that remains pending.  In support of Defendants' Motion for Summary Judgment on this issue, Defendants filed the July 29, 2004 affidavit of Richard Bowers.   Mr. Bowers' affidavit establishes that St. Paul was provided with notice of the <u>Haan</u> claim and lawsuit on or about October 10, 1997.  <u>Id</u>.  At that time, St. Paul was provided with a copy of the <u>Haan</u> Complaint.  <u>Id</u>.  St. Paul was also advised of the serious nature of the claim.   <u>Id</u>.   This evidence alone refutes the allegation that Defendants were some how negligent in failing to notify St. Paul of the <u>Haan</u> claim and in fact, establishes that Defendants did indeed provide St. Paul with notice of the <u>Haan</u> claim and case as early as 1997.

Furthermore, to Royal's knowledge, St. Paul was given notice of the <u>Haan</u> claim in October of 1997 and Royal has no knowledge as to whether Defendants did anything wrong insofar as notification to St. Paul of the <u>Haan</u> claim.  <u>See</u> Richard Strom's April 16, 2003 deposition at 179-180.

**F.**    **Based Upon The Undisputed Evidence Before This Court, No Cause Of Action Exists Against Any Of The Defendants Since Royal Voluntarily Paid The Settlement Of The Haan Claim Without Reserving Or Otherwise Protecting Its Right To Assert A Defense To Coverage**

The remaining relevant point in Royal's Amended Complaint is Count I which purports to assert a cause of action for Breach of Contract against Defendants Coachmen and GBM. Breach can only be established by Royal if Royal can prove Defendants intentionally concealed the information discussed above from it until after Royal settled the Haan lawsuit. In light of the fact that Royal has no evidence to establish that either of these Defendants intentionally concealed anything from Royal at any point in time, Defendants submit this cause of action fails to present any issue of material fact. Indeed, the record evidence instead establishes that Royal voluntarily paid the settlement of the Haan claim without reserving or otherwise protecting its right to assert a defense to coverage.

Mr. Strom and his supervisor Mr. Mooney both admit the revelation of the Naj letter and the additional information about the Robichaux case suggested to them that Royal had grounds to reserve its rights to deny coverage of the Haan lawsuit. See Richard Strom's July 7, 2003 deposition at 79, 92 and Robert Mooney's July 16, 2004 deposition at 54-55. *In fact, Defendants' other excess carriers that were involved in the Haan lawsuit, who had received less information by February of 1999, reserved their rights.* See Richard Strom's April 16, 2003 deposition testimony at 150-151, 167-168 and 172-176, and Richard Strom's July 7, 2004 deposition at 98. Royal could have, too. Consequently, Royal waived its defenses to coverage, if indeed any defenses ever existed. See generally 14 Couch on Ins. §208:4 (3d ed.)"; see also this Court's December 18, 2001 Order Denying Plaintiff's Motion for Reconsideration; Steadfast Insurance Company v. Sheridan Children's Healthcare Services,

Inc., 34 F.Supp.2d 1364, 1366 (S.D. Fla. 1998); and Employers Mutual Liability Ins. Co. v. Sears Roebuck and Co., 621 F.2d 746, 748 (5th Cir. 1980). Royal's attempts to plead its way around complete dismissal of this case by alleging it did not learn until after the settlement of the Haan claim that the Robichaux matter and other damaging product defect information had been "secreted" by GBM and Coachmen is futile and disingenuous in light of the fact that Royal admittedly has no evidence to support these allegations. Royal's representatives' admissions make it clear that Royal was aware that it had grounds to reserve its rights. Instead of reserving its rights, it accepted the information and voluntarily decided to settle the Haan lawsuit.

Accordingly, since Royal has no evidence that anything was ever concealed from it at any time and because the evidence instead establishes that Royal had sufficient information to assert a defense to coverage of the Haan claim before the case was settled, Summary Judgment should be granted in favor of all Defendants on all claims asserted against them by Royal.

### III.   CONCLUSION

None of the remaining causes of action asserted by Royal against any of the Defendants are actionable. Accordingly, Summary Judgment should be granted in favor of all Defendants on all remaining counts asserted by Royal against them.

**WHEREFORE**, Defendants respectfully request this Honorable Court to follow the authority set forth herein, dismiss with prejudice Plaintiff Royal's Amended Complaint against all Defendants and enter Judgment in favor of them against Plaintiff Royal.

Respectfully submitted,

**ANDERSON ST DENIS & GLENN, P.A.**

_____

**GREGORY A. ANDERSON**
Florida Bar No.: 398853
**JOHN GLENN**
Florida Bar No.: 0957860
**HEATHER ANN M. SOLANKA**
Florida Bar No.: 0497347
225 Water Street, Suite 2100
Jacksonville, Florida 32202
904-633-9402
904-633-9403 Facsimile
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to Dennis J. Wall, Esquire, 3452 Lake Lynda Drive, Suite 170, Orlando, Florida 32817-1472, Lisa A. Oonk, Esquire, Bayport Plaza, Suite 1100, 6200 Courtney Campbell Causeway, Tampa, FL 33607-5946 and Dave Brecher, Smith, Gambrell & Russell, LLP, 50 N. Laura Street, Suite 2200, Jacksonville, Florida 32201, via facsimile and U.S. Mail this _____ day of August, 2004.

_____
Attorney