UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ROYAL SURPLUS LINES
INSURANCE COMPANY,

    Plaintiff,

v.                                Case No. 3:01-cv-301-J-HTS

COACHMEN INDUSTRIES, INC.,
et al.,

    Defendants.
_____

## **O R D E R**

### **I. Status**

This cause is before the Court on Plaintiff's-Counterdefendant's Application for Preliminary Hearing Before Trial on Defense of Failure to State a Claim upon which Relief can be Granted (Doc. #415; Application), filed on January 5, 2005. Defendants'/Counterplaintiffs' Memorandum of Law in Opposition to Plaintiff's/Counterdefendant's Application for Preliminary Hearing Before Trial on Defense of Failure to State a Claim upon which Relief can be Granted (Doc. #423; Opposition) was filed on January 10, 2005. At a hearing held on January 11, 2005, counsel for the

parties presented oral argument as to whether Defendants' sole remaining count should be dismissed.[1]

## II. Discussion

Plaintiff (Royal) contends "Count II,'Coachmen and GBM's alleged claim for fiduciary duty/common law bad faith against Royal', fails to state a claim upon which relief can be granted." Application at 2. Royal suggests such bad faith claims must, under Florida law, involve exposure of the "'insured to a judgment which exceeds the coverage provided by the policy.'" *Id.* at 3 (quoting *Dunn v. Nat'l Sec. Fire & Cas. Co.*, 631 So. 2d 1103, 1106 (Fla. 5th Dist. Ct. App. 1993). It observes that Coachmen Industries, Inc. and Georgie Boy Manufacturing's Amended Counterclaim (Doc. #360; Counterclaim), filed on June 28, 2004, "does not allege that Royal refused to pay any covered claim against the Counterplaintiffs." Application at 4 (capitalization omitted). Rather, the Counterclaim "affirmatively allege[s] that Royal settled the underlying claim[.]" *Id.* (capitalization omitted); *see also id.* at 5 ("Here, the Counterplaintiffs allege that Royal as their insurer has settled a cause of action against them within the policy limits of the insurance contract.") (emphasis and capitalization omitted). Thus, because there is no excess judgment at issue, acceptance of Plaintiff's argument would require dismissal of the Counterclaim. Royal requests that such dismissal be effected with prejudice. *Id.* at 16.

---

[1] For a general discussion of background information relating to this case, see the Court's earlier Order (Doc. #186), entered on September 17, 2002, and Report and Recommendation (Doc. #283), entered on May 20, 2003.

**A. Timeliness**

In the Opposition, Defendants initially assert the Application should be denied as untimely. Opposition at 2-3. The Court is not persuaded. The argument raised by Royal "should be heard prior to trial to prevent any unnecessary proceedings." *Walker Mgmt., Inc. v. Affordable Communities of Mo.*, 912 F. Supp. 455, 458 (E.D. Mo. 1996) (observing this "is in accordance with Fed.R.Civ.P. 1 which calls for the Court to construe the rules to 'secure the just[,] speedy[,] and inexpensive determination of every action'"). Defendants miss the mark with their statement that consideration of the Application "would be fundamentally unfair" in view of expenses incurred subsequent to the dispositive motion deadline. Opposition at 3. If indeed their Counterclaim fails to state a valid cause of action, the additional and substantial expense of a pointless trial would only make matters worse.

Defendants, in their argument as to timeliness, reference only Rule 12(b)(6), Federal Rules of Civil Procedure (Rule(s)). Possibly, then, they perceive the Application to be a motion made directly pursuant to that Rule. In this vein, the Court notes that in its Answer Presenting Defenses under Rule 12(b) to Count II of June 25, 2004 Counterclaim (Doc. #369), filed on July 9, 2004, Plaintiff raised the contention Defendants failed to state a valid claim. *Id.* at 2-3 (alleging failure to state claim, at 3, since "rather than alleging that Royal failed and refused to settle[, Defendants] affirmatively allege[] that Royal settled . . .") (emphasis omitted); *see also* Answer Presenting Defenses under Rule 12(b) to Count III of October 15, 2001 Counterclaim (Doc. #51), filed on November 16, 2001, at 2-3. Therefore, Defendants have

been on notice of this defense to their common law bad faith count for quite some time. Under these circumstances, even had Royal filed its request as a motion pursuant to Rule 12(b)(6) (in which case it would clearly be untimely), the Court could "view[] the motion as a 12(d) motion for disposition before trial." *Walker Mgmt., Inc.*, 912 F. Supp. at 458 (citing *Resolution Trust Corp. v. Holland & Knight*, 832 F. Supp. 1528, 1529 n.2 (S.D. Fla. 1993)).

Plaintiff has not, in any event, mistakenly moved pursuant to Rule 12(b)(6). It indicates it is proceeding under Rule 12(d). *See* Application at 1. That rule provides:

> (d) Preliminary Hearings. The defenses specifically enumerated (1)-(7) in subdivision (b) of this rule, whether made in a pleading or by motion, and the motion for judgment mentioned in subdivision (c) of this rule shall be heard and determined before trial on application of any party, unless the court orders that the hearing and determination thereof be deferred until the trial.

As Plaintiff permissibly raised its defense in a pleading, Rule 12(d) indicates all parties have been entitled to apply for a hearing on the defense. Accordingly, if Defendants desired an earlier resolution of the matter, they could have so applied.

Moreover, even if the Application were viewed as untimely, the Court would still possess the authority to consider it at this stage of the proceedings. This is suggested by the text of Rule 12(d), which recognizes courts have discretion to defer even until trial "the hearing and determination" contemplated thereunder. *See also* 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1373 at 287 (3d ed. 2004) ("In the absence of a

request for a preliminary hearing, the determination of defenses simply may be deferred by the district court until the trial.").

Of even greater importance is that courts have the power to dismiss, *sua sponte,* claims failing to state a cause of action. *Wachtler v. County of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994) (district courts have power to dismiss complaints *sua sponte* after giving notice and opportunity to be heard); *Prudential Ins. Co. of Am. v. Tolbert*, 320 F. Supp. 2d 1378, 1382, 1382-83 n.4 (S.D. Ga. 2004) (dismissing counterclaim *sua sponte* without providing notice but indicating defendant may move for reconsideration); *see also Osburn v. Cox*, 369 F.3d 1283, 1286 n.1 (11th Cir. 2004) (noting district court's *sua sponte* dismissal for failure to state a claim). At the time the Application was filed, the Court was considering putting the parties on notice that it might, on its own motion, address the issue of whether the remaining count of the Counterclaim states a claim for which relief can be granted. Certainly, the filing of the Application could not serve to deprive the Court of its authority to inquire into whether a claim is stated and, if the answer be no, to dismiss the remainder of the case.

In view of the foregoing discussion, the Court will proceed to determine whether what is left of this action should be dismissed for failure to state a claim.

**B. Standard of Review**

A court should not dismiss for failure to state a claim, "'unless it appears beyond doubt that the [party] can prove no set of facts in support of his claim.'" *Beck v. Deloitte & Touche*, 144 F.3d 732, 735 (11th Cir. 1998) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

> In evaluating the sufficiency of a [pleading], a court must accept the well pleaded facts as true and resolve them in the light most favorable to the [nonmovant]. . . . In seeking dismissal for failure to state a viable claim, a [movant] thus bears the very high burden of showing [the opposing party] cannot conceivably prove any set of facts that would entitle him to relief.

*Id.* at 735-36 (citations and internal quotation marks omitted); *see also Sater Group, Inc. v. Divco Constr. Corp.*, No. 2:01CV610FTM29DNF, 2003 WL 1191212, at *1 (M.D. Fla. Jan. 9, 2003).

Nevertheless, "some minimal pleading standard does exist." *Jackson v. Bellsouth Telecomm.*, 372 F.3d 1250, 1262 (11th Cir. 2004) (internal quotation marks omitted). Parties bringing claims "must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims." *Id.* at 1263.

**C. Substantive Law to be Applied**

In this diversity case, the substantive law of the forum state, Florida, is applicable. *See Trans Coastal Roofing Co. v. David Boland Inc.*, 309 F.3d 758, 760 (11th Cir. 2002) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Thus, the Court "must decide the case the way it appears the Florida Supreme Court would

decide it." *KMS Rest. Corp. v. Wendy's Int'l, Inc.*, 361 F.3d 1321, 1325 (11th Cir. 2004); *see Medalie v. FSC Sec. Corp.*, 87 F. Supp. 2d 1295, 1301-1302 (S.D. Fla. 2000). However, while a federal appeals court can choose to obtain guidance from the Florida Supreme Court by certifying questions to it, district courts lack this option. *See* Fla. Const. Art. 5, § 3(b)(6); *F.D.I.C. v. Verex Assurance*, Inc., 3 F.3d 391, 396 (11th Cir. 1993); *Medalie*, 87 F. Supp. 2d at 1304 (citing Fla. Const. Art. 5, § 3(b)(6) and Fla.R.App.P. Rule 9.150(a)).

### D. Bad Faith Claims Based on Conduct after Settlement

As the Court has previously stated, in Count II of the Counterclaim, Defendants "claim that by bringing suit against them, 'Royal has acted in its own self interest at the expense of Coachmen and GBM.'" Order (Doc. #417), entered on January 5, 2005, at 2 (quoting Counterclaim ¶ 41); *see also* Counterclaim ¶¶ 41 ("By now attempting to wrongfully recoup and/or extort . . . .), 42 ("Specifically, Royal . . . is now acting in bad faith and in violation of its fiduciary duty . . . by pursuing non-existent remedies . . . ."); *cf.* Application at 5 ("Count II . . . is based on the same 'alleged attempt' by Royal to wrongfully recoup and/or extort monies . . . . The Counterplaintiffs' gripe with Royal is not that Royal paid the [underlying] claim, but rather that Royal filed this lawsuit against the Counterplaintiffs.")(capitalization omitted). The Counterclaim mentions Royal had opportunities to settle the underlying case at mediation, *id.* ¶ 39, but it does not

allege Royal acted unreasonably or in bad faith in not settling earlier than it did. In the context of defending against a motion to strike, Defendants themselves have characterized the allegation, which also appears elsewhere in the Counterclaim, *id.* ¶ 15, as a "passing reference[] to mediation[.]" Defendants' Memorandum of Law in Opposition to Plaintiff's, Royal's, Combined Motions with Memorandum (1) to Dismiss All Counts of June 25, 2004 Amended Counterclaim of Defendants, (2) for Summary Judgment on Counts I, III, I[V], and V of Amended Counterclaim, and (3) Motion to Strike Certain Claims and Allegations, and Alternatively, Motion for Leave to Amend Counterclaim (Docs. ##374-75), filed on August 5, 2004, at 11 (additionally stating "Defendants allege *only* that Plaintiff was given the opportunity to settle the [underlying] matter during mediation for less . . . money than it was ultimately settled for") (emphasis added).

Defendants have not cited, and the Court has not uncovered, any authority indicating conduct subsequent to settlement can give rise to a common law bad faith claim under Florida law. While Defendants might be able to bring a suit for malicious prosecution after a judgment in the instant case becomes final, *see* Order (Doc. #399), entered on November 12, 2004, at 9-10; Report and Recommendation (Doc. #283), entered on May 20, 2003, at 9-10, they have not, in Count II of the Counterclaim, stated a viable claim.

**E. Propriety of Further Amendment**

Defendants, in the Opposition, seem to claim Royal's decision not to settle the underlying case "at the October 1998 mediation" amounted to bad faith. *Id.* at 6. They also suggest that certain actions taken after settlement but before the lawsuit was initiated were performed in bad faith. *See id.* at 4-5. As the Court's discussion above indicates, the Counterclaim makes no such allegations. Since it instead states only that Royal acted in bad faith by bringing and pursuing this lawsuit, the Counterclaim would need to be amended for Defendants to pursue their new, quite different allegation. At the hearing, counsel for Defendants expressed a desire to amend the Counterclaim.

Several Case Management and Scheduling Orders (Docs. ##31, 207, 278, 327; CMSOs) have entered and indicated all motions to amend pleadings thereafter would be disfavored. The CMSOs did not set a specific deadline for the parties to file amended pleadings. Under these circumstances, the standard for amendments set forth in Rule 15(a) applies. *See Perez v. Pavex Corp.*, No. 801CV0069T27MSS, 2002 WL 31500404, at *1 (M.D. Fla. Oct. 18, 2002); Order (Doc. #399), entered on November 12, 2004, at 11.

In determining whether to grant or deny a motion to amend under Rule 15, the court may consider "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment,

futility of amendment, etc. . . ."  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Spanish Broadcasting System of Fla., Inc. v. Clear Channel Communications, Inc.*, 376 F.3d 1065, 1077 (11th Cir. 2004); *Technical Res. Servs. v. Dornier Med. Sys.,* 134 F.3d 1458, 1463 (11th Cir. 1998).

Defendants have already amended Count II once, albeit without specific permission from the Court.  *See* Order (Doc. #399), entered on November 12, 2004, at 15-16.  As discovery is long closed, it is apparent any facts underlying new allegations have been known to Defendants for many months.  Their decision to wait until the eve of the scheduled trial to unveil fresh charges reflects undue delay.  The potential for unfair prejudice to Plaintiff under such circumstances is also obvious.  These grounds alone justify denying leave to amend.  The Court accordingly holds the Counterclaim should be dismissed with prejudice whether or not amendment would be futile.  Nevertheless, as the following discussion shows, amending the count to include allegations raised in the Opposition would not appear to remedy the Defendants' difficulties.

**F.  Requirement of Exposure to Excess Judgment**

Even were the Counterclaim amended to allege pre-suit bad faith, it would fail to state a valid claim.  In this case, contrary to Defendants' contention, *see* Opposition at 5-8, exposure to an excess judgment is an essential element of their claim for common law bad faith.

Defendants' alleged cause of action does not fall within the recognized scope of common law bad faith actions against insurers. "[T]he purpose of an insurer's obligation to act in good faith is to protect an insured from an excess verdict[.]" *Berges v. Infinity Ins. Co.*, ___ So. 2d ___, 2004 WL 2609255, at *5 (Fla. 2004). Accordingly, exposure to an excess judgment has been described as part of the "essence of a bad-faith cause of action[.]" *Rosen v. Fla. Ins. Guar. Ass'n*, 802 So. 2d 291, 294 (Fla. 2001); *see Romano v. Am. Cas. Co. of Reading, Pa.*, 834 F.2d 968, 969 (11th Cir. 1987); *Dunn*, 631 So. 2d at 1106. Aside from an extraordinary circumstance, such as where an insurer "settl[es] a claim in a manner that bars the insured's counterclaim[,]" *Shuster v. South Broward Hosp. Dist. Physicians' Prof'l Liab. Ins. Trust*, 591 So. 2d 174, 177 (Fla. 1992), the insured must be exposed to an excess judgment to state a viable cause of action.[2]

Defendants cite only one case, *N. Am. Van Lines, Inc. v. Lexington Ins. Co.*, 678 So. 2d 1325 (Fla. 4th Dist. Ct. App. 1996), in their attempt to support the proposition an excess judgment is not required. Opposition at 5-7. In *North American Van Lines*, a divided court determined the plaintiff stated a claim where its insurers had repeatedly refused to settle, ultimately forcing it to contribute a large sum in order to effect settlement. *Id.* at 1328. In dicta, the court also expressed its opinion that liability could

---

[2] Similar to the insurance policy between the parties in *Shuster*, the policy in this case granted the insurer discretion in settling claims or lawsuits.

- 11 -

flow from settlement delay "requir[ing the plaintiff] to expend substantial additional funds defending the case, which by the terms of the policy would not be collectible[.]"  *Id.* at 1333 n.4.

*North American Van Lines* does not correspond to the state of the law in Florida as enunciated by the state's supreme court.  As alluded to above, the Florida Supreme Court has continued to emphasize (with no new exceptions) the importance of exposure to an excess judgment in common law bad faith actions.  Further, the Court notes *North American Van Lines* has been subjected to scholarly criticism.  Commentators have written that "the Fourth Appellate District appears to have ignored the clear rule of the Florida Supreme Court in *Cope*."  David R. Anderson & John W. Dunfee, *No Harm, No Foul: Why a Bad Faith Claim Should Fail When an Insurer Pays the Excess Verdict*, 33 Tort & Ins. L.J. 1001, 1012 (1998).  While the Court views the opinions of intermediate state courts "as indicia of the leanings of the state's highest court," it is convinced that, in this instance, "the state supreme court would reach a different conclusion."  *Medalie*, 87 F. Supp. 2d at 1301-02 (internal quotation marks omitted); *see KMS Rest. Corp.*, 361 F.3d at 1325.

Additionally, even if *North American Van Lines* was correctly decided, it is distinguishable.  Defendants do not suggest they contributed toward settlement beyond the amount of their self-insured retention.  To the contrary, their allegations indicate they did not.  *See, e.g.*, Counterclaim ¶¶ 15-16; Opposition at 7

("although Royal paid the settlement funds necessary to settle . . ."). Thus, if the Florida Supreme Court were inclined to view being forced to contribute additional amounts toward settlement as an extraordinary circumstance necessitating exemption from the usual rule, Defendants would not benefit.

The dicta in *North American Van Lines* characterizing a requirement to expend excess funds in defense of an underlying case as equal to an excess judgment, if accepted as an accurate statement of Florida law, would also fail to help Defendants. Here there is no claim the insurance policy required them to defend in the underlying suit such that a delay in settlement obligated them "to expend substantial additional funds defending the case, which . . . would not be collectible[.]" 678 So. 2d at 1333 n.4; *see also id.* at 1329 ("[T]he important feature is that under the policy terms, NAVL had the duty to defend itself and prudently settle claims."). Instead, Defendants assert Coachmen Industries, Inc., has been forced to spend money "defending itself *in this action*[.]" Opposition at 7 (emphasis added). Expenses associated with defending oneself in post-settlement litigation are clearly not "the equivalent of an excess verdict" in an underlying suit, *id.* at 8, as Defendants assert. Consequently, even if its dicta accurately reflected the Supreme Court of Florida's view of the law, *North American Van Lines* would not create a cause of action under the circumstances of this case.

As already mentioned, Defendants have failed to cite authority indicating conduct subsequent to settlement can give rise to a common law bad faith claim under Florida law. The present discussion suggests as well the futility of allowing Defendants to amend their counterclaim to allege pre-settlement bad faith. Having considered the papers submitted to the Court and the positions of the parties as expressed at the hearing, it is concluded the remainder of this case should be dismissed.

**G. Resurrection of Statutory Bad Faith Claim**

As an alternative to complete dismissal, Defendants request reconsideration of an order entered in 2001. Opposition at 11-13. This request, which is unaccompanied by persuasive argument, will be denied.[3]

**H. Plaintiff's Attorney Fee Request**

Royal seeks, pursuant to Rule 11, the attorney's fees associated with defending itself "against this Count II, and its predecessor[.]" Application at 5. According to Royal, the allegations of the common law bad faith count are so clearly "frivolous, without merit, and lacking any basis in law or in fact alleged," that sanctions are appropriate. *Id.*

---

[3] Essentially, Defendants concede that for several years they have neglected pursuing a statutory claim. *See id.* In 2001, after Defendants failed to meet the relevant deadline for asserting it, the Court denied their motion for an extension, which did not show (or even allege) good cause. *See* Order (Doc #61), entered on December 18, 2001, at 6-7. Defendants articulate no convincing basis for reconsideration.

- 14 -

Although the Court has ultimately decided the count is subject to dismissal, it is not prepared to find the imposition of Rule 11 sanctions is warranted. While *North American Van Lines* cannot save Defendants' claim from dismissal, the Court appreciates how a party could, in good faith, believe the case might permit maintenance of the instant counterclaim. The legal claim is thus deemed nonfrivolous, and Plaintiff presents no information showing frivolousness as to material factual statements. Therefore, even assuming the request for sanctions is properly before the Court, *cf.* Opposition at 2, it is appropriately denied.

### III. Conclusion

In light of the foregoing, the Application (Doc. #415) is **GRANTED** to the extent Count II of the Counterclaim is **DISMISSED** with prejudice. Otherwise, it is **DENIED.** The request for reconsideration contained within the Opposition (Doc. #423) is **DENIED**.

**DONE AND ORDERED** at Jacksonville, Florida this 18th day of January, 2005.

/s/     Howard T. Snyder
HOWARD T. SNYDER
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record and
    *pro se* parties, if any